RODNEY C. PAYNE, VS. ROBERT B. ATTERBURRY.

Where from the answer itself there is a strong presumption against the defendants title, which is impeached by the bill, the court will grant a receiver.

Nothing can be clearer both in law and equity and from natural justice than that the complainant is entitled to the rents and profits from the time his title accrued; and the case is still stronger where there are large outstanding incumbrances; and no part of the rents and profits is applied to keep down the interest, and the defendant is totally irresponsible, and is holding over against his own deed. In such a case the complainant is entitled to a receiver

A receiver will be appointed in behalf of a vendor as against a vendee who has obtained possession and refuses to pay the purchase money.

Where the answer admitted a deed referred to in the bill and stated no fact which invalidated it, but denied generally its validity, *it was held* to be insufficient—that it was swearing to a conclusion the deed itself denied, when it should have stated the facts which made the deed invalid so the court could pass upon them.

A party who attempts to impeach his deed in court, must show in what his equity consists, for as a question of law he is estoped from denying his own deed.

A vendee who has paid the purchase money punctually, has a lien as against the vendor analagous to that of a vendor against a vendee who has not paid the purchase money.

The bill in this case states that Dec. 8, 1838, defendant became the purchaser of the N. E. qr. of sec. No. 14, town 7 S. range 17 W., containing 159 28-100 acres ; also the N. W. fr qr. of sec. 13 town 7 S. range 17 W., containing 136 46-100 acres. That soon after such purchase defendant mortgaged the same to George W. Walker, to secure the sum of $2,500 which, according to the belief of complainant was for the purchase money of said premises. That another mortgage was executed by defendants upon the same premises to John Hamilton, to secure the sum of $1,000, which according to the belief of complainant was also for purchase money. That the defendant purchased said premises subject to a mortgage made by John Hamilton to Alfred Stanton for $2,000, also subject to a mortgage made by Jacob Beeson to George Kimmel, upon which there was due at the time of the purchase about $1,000. That defendant came to Michigan from New York in the spring of 1839, and commenced erecting a large flouring mill upon that part of the premises described as the north-east quarter of section fourteen. That the defendant was possessed of little or no means for carrying on and completing the mill, but relied on his credit and the chance of procuring

loans of money for that purpose.  That August 14, 1839, defendant applied to complainant as cashier of the F. & M. Bank of Michigan, at St. Joseph, for a loan of money to be used in erecting said mill, and informed complainant that he had funds in the hands of Philip S. Crooke of New York City, who would accept the drafts of defendant and would certainly pay the same at maturity.  That confiding in these statements complainant made a loan of $2,000 to the defend- ant upon his draft drawn upon said Crooke, payable four months af- ter sight.  That August 24, 1839, said Crooke accepted the draft in writing thereon.  That September 14, in the same year, defendant again applied to complainant for another loan of $3,000 upon the same kind of security, and complainant having confidence in the in- tegrity of defendant, which was strengthened by the ready accept- ance of the first draft by said Crooke, which had not yet matured, complainant did loan and advance to defendant the further sum of $3,000 to aid defendant in building said mill, and the defendant as security therefor drew his other bill of exchange dated at St. Joseph September 14, 1836, directed to said Crooke, payable sixty days af- ter sight, payable to the order of R. C. Payne, Esq., Cashier, for the sum of $3,000.  That September 26, the same was accepted by said Crooke in writing.

The bill further states that prior to the drawing of the first men- tioned bill or draft, defendant had borrowed $200, and had drawn on said] Crooke to pay the same ; that said Crooke accep- ted said draft, and defendant made provisions for the payment of the same out of the money obtained on the $2,000 draft, thereby indu- cing the complainant to believe he actually had money in the hands of Crooke in New York.

The bill further states that the complainant commenced suits in the Circuit court for Berrien county in the spring of 1840, on the two drafts of $2,000 and $3,000, they having been protested for nonpayment ; that the defendant, Atterbury, executed a deed of the premises to Crooke, bearing date, March 1, 1839, for the considera- tion of $7,800, subject to the mortgages aforesaid, which was recor- ded June 24, 1840.  The bill further states that in the summer of 1840, an attachment suit was commenced against Crooke by the com-

plaimant for the purpose of collecting the amount due on the drafts and the property in question was seized. That suit was finally settled by the complainant agreeing to take a deed of the premises and paying for them $2,191, being the amount of some lien upon the premises on which Crooke was liable and surrendering the two drafts drawn by Atterbury, then amounting to $5,299. On the 14th of October, 1840, this negociation was consummated, and Crooke deeded complainant the lands described with the mills and appurtenances.

The bill states that various offers were made to the defendant for the purpose of finally and amicably arranging the same, but he has refused to do any thing towards paying the amouut due, and will not yield up the premises to the complainant ; that a suit of ejectment has been commenced against the defendant to obtain possession of the property, but in the mean time the property is depreciating in value from the neglect of the defendant who is insolvent and unable to respond in damages.

The bill further states that the interest on the several mortgages has not been paid up, but is suffered to accumulate by the defendant; that the mill is out of repair, and from neglect of defendant there is great danger of the dam being carried away, which will injure the property to the amount of $1,500 to $2,000 ; states that the defendant has made threats to destroy the mill, and said complainant should never have any benefit from it. The bill prays that a receiver may be appointed of the rents and profits of the mill and property during the pendancy of the suit in ejectment.

The answer admits the purchase of the property, and that it is subject to the several mortgages mentioned ; admits the obtaining the money on the drafts on Crooke, and that he paid the $200 draft out of the money obtained on the $2,000 draft ; admits the drafts were protested for non-payment, and that suits have been commenced against him. His answer denies the deed to Crooke was valid, as it wanted a proper acknowledgement as required by the statutes of this state, but admits it has been placed on record in Berrien county, where the lands are situated. The defendant says he always claimed the property, and when the attachment suit was commenced against Crooke, notified the complainant to that effect ; neither admits nor denies the settlement between complainant and Crooke and the ta-

king of the deed from him as set forth in the bill of complainant.— 3rd Circuit.
Admits various propositions, and that they were not accepted ; de-
nies that the complainant has peaceably and quietly attempted to ob-
tain possession of the mill, or that the mill is out of repair, or has
been suffered to become in any way injured for want of repair, or
that he is insolvent and unable to pay the amount due to the com-
plainant ; admits the interest on all the mortgages has not been paid;
denies that he is abusing the mill or premises ; avers they are in good
condition ; admits he may have used hasty expressions about the
complainant's obtaining the property and deriving any benefit there-
from ; admits complainant has requested him to deliver possession of
the premises, which he refused, and that a suit in ejectment has been
commenced ; denies pretences, combination, &c.

<em>Payne.<br>vs.<br>Atterbury.</em>

GREEN & DANA, Sol. for comp., moved for the appointment of
a receiver in accordance with the prayer of the bill, upon the bill
answers and depositions showing the value, condition and situation of
the property.

V. L. BRADFORD & J. G. ATTERBURY opposed the motion.

THE CHANCELLOR.—From the case presented the complainant has
made out a *legal* title to the property in question. In the case of *Still-
well* vs. *Williams*, 6 *Madd.*, *R.* 39, it is said "that where from the an-
swer itself there is a strong presumption against the defendant's title
which is impeached by the bill, the court will grant a receiver." The
answer of the defendant in this case shows or raises a strong presump-
tion of title in the complainant. It admits the deed to Crooke—the deed
from Crooke to the complainant, and it states no facts which invalidate
it. It denies generally its validity, but that is swearing to a conclusion
which the defendant's own deed denies. He should state the facts
which make the deed invalid, that the court may pass upon them, and
not having done this, his deed must be held to bind him. The evi-
dence in the case raises a strong presumption that the defendant' in
attempting to evade the payment of his debts was so far guilty of a
fraud, as that he could be estopped from setting up the facts upon
which he relies even as against Crooke himself. Indeed, from the
testimony of Thomas Constantine and John S. Chipman, it is ap-
parent that this must be so. And if this shall prove to be the contin-

gency referred to in the answer, it would constitute no defence either in law or equity. He should have shown in what his equity consists, for as a question of law he is estopped from denying his own deed. A receiver will be appointed in behalf of a vendor as against a vendee who has obtained possession and refuses to pay the purchase money.

It is held in 15 *Vesey*, 344, that a vendee who has paid the purchase money prematurely, has a lien as against the vendor analagous to that of a vendor in the opposite case. The defendant as the case is presented is holding over as against his own deed, and is not responsible for *mesne* profits or permissive waste. The amount of incumbrances including the drafts paid by the complainant amounts with interest and costs to about the sum of sixteen thousand dollars; this, from the testimony, must be the full value of the property or more. It also appears that the property could and should be made productive, and that it should yield sufficient to keep down the accruing interest on the incumbrances. But instead of that, that nothing whatever is paid on the outstanding mortgages, some of which are in process of foreclosure, and which the complainant must extinguish in order to protect himself; that a property which should produce some $2,500 per annum, is actually not doing more than about one-tenth of the business of which it is capable.

The evidence in regard to the danger of the property is contradictory, but the *weight* of evidence is that the mill is badly managed and the dam in a hazardous condition. The facts show bad management, a depreciation in the value of the property, and a total neglect of duty or inability to perform it on the part of the defendant. The case under all its circumstances is one pressing itself very strongly upon the discretion of the court. There is a large amount of interest constantly accruing on the outstanding incumbrances, all of which must fall on the complainant. This valuable property which, under ordinary management should produce sufficient to keep down the incumbrances, is actually paying nothing upon them, but the interest is suffered to accumulate, and the defendant is irresponsible. If this motion is refused the complainant is subjected to almost irreparable, inevitalbe injury, for which he has do redress. No rule is better settled than that the complainant is entitled to the rents and profits from

the time his title accrued. Lord Hardwicke in *Dormer* vs. *Fortescue* 3 *Atk. R.*, 128, observes : "Nothing can be clearer both in law and equity and from Natural justice than that the plaintiff is entitled to the rents and profits from the time his title accrued." *Green* vs *Biddle* 8 *Wheat.*, 1. The case is still stronger where there are large outstanding incumbrances, and no part of the rents and profits are applied to keeping down the interest, and the defendant totally irres ponsible.

The answer of the defendant is in, testimony has been taken ;— from the answer and testimony it results that there is imminent danger that the complainant must lose the intermediate rents and profits unless the motion be granted ; that the interest is permitted to accumulate on this large amount of incumbrances, and that the property is not made productive, and a portion is purmitted to go to entirely to waste, and the weight of evidence is that it is in danger of destruction.

Under this state of facts the court cannot be satisfied that its duty is performed without the appointmet of a receiver.

Order accordingly.